# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### MONROE DIVISION

| | |
|---|---|
| **DERRICK DUKES** | **CIVIL ACTION NO. 18-1184** |
| | **SECTION P** |
| **VS.** | |
| | **JUDGE TERRY A. DOUGHTY** |
| **UNNAMED DEFENDANT, ET AL.** | **MAG. JUDGE KAREN L. HAYES** |

## REPORT AND RECOMMENDATION

Plaintiff Derrick Dukes, a prisoner at Jackson Parish Correctional Center Phase II proceeding pro se and in forma pauperis, filed the instant proceeding on August 31, 2018, under 42 U.S.C. § 1983. He names LaSalle Management and the Warden of Madison Parish Correctional Center as Defendants.[1] For the following reasons, Plaintiff's claims should be dismissed.

## Background

Plaintiff alleges in his initial pleading that, when he was confined in Madison Parish Correctional Center ("MPCC"),[2] he endured hazardous living conditions. [doc. # 1]. He claims that some toilets and urinals would overflow and others would not flush, resulting in "a smell which is a brewing house for bacteria infection, Hep C, HIV, and aids [sic]." *Id.* Approximately 203 toilets had "bags over them . . . ." *Id.* The sinks and showers lacked water pressure, and the water contained rust and lead. *Id.* Plaintiff adds that he was forced to eat his meals in those conditions. *Id.* He asks the Court to inform him of any "thing [he] can do" and to "inform the

---

[1] This matter has been referred to the undersigned for review, report, and recommendation in accordance with 28 U.S.C. § 636 and the standing orders of the Court.

[2] Plaintiff is, to reiterate, currently confined in Jackson Parish Correctional Center Phase II.

proper authority of [the conditions] so [he and forty-two other inmate signatories to the pleading] can get some help . . . ."  *Id.* at 1-2.

In his second pleading, Plaintiff names LaSalle Management as a defendant and specifies that the conditions described above occurred between August 28, 2018, and September 6, 2018. [doc. # 4, p. 3].  He asks the Court to "assess[]" LaSalle Management "to prove the misuse and misconduct of state money which should be . . . for better use such as (healthcare) [sic]."  *Id.* at 4.

Plaintiff filed a third pleading on October 26, 2018, ostensibly naming the Warden of MPCC as a defendant and alleging that the warden refuses to remedy the "unsafe environment" and opens his legal mail before delivering it to him.  [doc. # 9, pp. 1-2].  He also alleges that, because other inmates have been stabbed and beaten, he fears he will either be stabbed or forced to fight. *Id.* at. 1.  He asks the Court to transfer him to another facility and to prevent officials at the facility from opening his legal mail.

On November 15, 2018, Plaintiff informed the Court that he was transferred to Lafourche Parish Transitional Work Program.  [doc. # 11].  On December 20, 2018, Plaintiff informed the Court that he was transferred to Jackson Parish Correctional Center Phase II.  [doc. # 13].

### Law and Analysis

### 1. Preliminary Screening

Plaintiff is a prisoner who has been permitted to proceed in forma pauperis.  As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A.[3]  See *Martin v. Scott,* 156 F.3d 578, 579-

---

[3]  Under 28 U.S.C. § 1915(h), "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or

80 (5th Cir. 1998) (*per curiam*).  Because he is proceeding in forma pauperis, his Complaint is also subject to screening under § 1915(e)(2).  Both § 1915(e)(2) (B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989).  A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327.  Courts are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless.  *Id.*

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570).  Plausibility does not equate to possibility or probability; it lies somewhere in between.  *Id.*  Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *Twombly*, 550 U.S. at 556.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."

---

diversionary program."

3

*Iqbal, supra.* A well-pleaded complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable, and that recovery is unlikely. *Twombly, supra.*

Likewise, a complaint fails to state a claim on which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. In making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). However, the same presumption does not extend to legal conclusions. *Iqbal, supra.* A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id.* "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp*, 632 F.3d 148, 152-53 (5th Cir. 2010). Courts are "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted). Consistent with the motion to dismiss standard above, a "[S]ection 1983 complaint must state specific facts, not simply legal and

4

constitutional conclusions." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

## 2. Separation of Powers

Plaintiff asks the Court to inform him of any "thing [he] can do" and to "inform the proper authority of [the conditions] so [he and forty-two other inmate signatories to the pleading] can get some help . . . ." [doc. # 1, pp. 1-2]. He also asks the Court to "assess[]" LaSalle Management "to prove the misuse and misconduct of state money which should be . . . for better use such as (healthcare) [sic]." [doc. # 4, p. 4].

There is no constitutional right to have a person criminally prosecuted. *Oliver v. Collins*, 914 F.2d 56, 60 (5th Cir. 1990).[4] Moreover, investigating and prosecuting possible criminal activities lies in the exclusive jurisdiction of the executive branch of government. In the federal context, for example, prosecuting criminal actions lies in the discretion of the Attorney General of the United States and duly authorized United States Attorneys. In Louisiana, prosecuting criminal actions lies in the discretion of the Louisiana Attorney General and the various District Attorneys. See LA. CODE. CRIM. PROC. arts. 61 and 62. Here, to the extent Plaintiff demands that the Court investigate Defendants or charge Defendants with crimes, his request should be denied as frivolous.[5]

---

[4] See *U.S. v. Batchelder*, 442 U.S. 114, 124 (1979) ("Whether to prosecute and what charge to file or bring before a grand jury are decisions that generally rest in the prosecutor's discretion."); *Linda R.S. v. Richard D*., 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another.").

[5] Plaintiff should, if he wishes, direct his concerns to a local, state, or federal police agency. That said, Plaintiff should be aware that, if a prosecuting authority investigates and chooses to forego filing charges, "[t]he decision to file or not file criminal charges . . . will not give rise to section 1983 liability." *Oliver*, 904 F.2d at 281. The courts "allow the government discretion to decide which individuals to prosecute, which offenses to charge, and what measure of punishment to seek." *U.S. v. Lawrence*, 179 F.3d 343, 348 (5th Cir. 1999); see, e.g. *Hymel v.*

**3. Injunctive Relief**

Plaintiff asks the Court to prevent officials at MPCC from opening his legal mail and to transfer him to either another facility or another dorm in MPCC.  Plaintiff, however, is no longer confined in MPCC.  Thus, his requests for relief concerning both the conditions of confinement at MPCC and his incoming mail at MPCC should be denied as moot.[6]  See *Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001) (determining that an inmate's transfer to a different unit rendered claims for declaratory and injunctive relief relating to environmental conditions at the original unit moot; see also *North Carolina v. Rice*, 404 U.S. 244, 246 (U.S. 1971) ("[F]ederal courts are without power to decide questions that cannot affect the rights of litigants in the case before them.").

**4. Standing**

Forty-two other prisoners signed Plaintiff's initial pleading.  [doc. # 1-2].  To the extent Plaintiff seeks to pursue relief on behalf of these prisoners—as opposed to simply listing them as witnesses—he lacks standing.

Persons claiming a deprivation of constitutional rights are required to show a deprivation of their personal rights, as opposed to the rights of others.  *Coon v. Ledbetter*, 780 F.2d 1158, 1159 (5th Cir. 1986); *Barrows v. Jackson*, 346 U.S. 249, 255 (1953) ("Ordinarily, one may not

---

*Champagne*, 2007 WL 1030207, *2 (E.D. La. 2007) (denying a plaintiff's request to investigate a correctional center: "this Court has no authority to issue such an order and plaintiff has no constitutional right to such an order. Moreover, to the extent that plaintiff is alleging that a criminal investigation should be instituted, such investigations are solely within the purview of law enforcement authorities.").

[6] Plaintiff does not allege or suggest that there is a reasonable, demonstrable probability that he will be transferred back to MPCC.  See *Hardwick v. Brinson*, 523 F.2d 798, 800 (5th Cir. 1975); *Murphy v. Hunt*, 455 U.S. 478, 482 (1982).

claim standing in this Court to vindicate the constitutional rights of some third party."). In *Resendez v. Texas*, 440 F. App'x 305, 306 (5th Cir. 2011), for example, the court held that, "to the extent that [the plaintiff] seeks to raise issues regarding the illegal confinement of other prisoners . . . , he lacks standing to bring those claims."); see *Kennedy v. Dallas Police Dep't*, 2007 WL 30260, at *2 (N.D. Tex. Jan.4, 2007) (plaintiff may bring a Section 1983 action only for deprivations he suffered).[7]

In addition, Plaintiff may not act as counsel for other prisoners. See, e.g., *Wade v. Carrollton–Farmers Branch Indep. Sch. Dist.*, 2009 WL 2058446, at *2 (N.D. Tex. July 14, 2009) ("[I]ndividuals who do not have a law license may not represent other parties even on a next friend basis."). Parties can represent themselves or they can be represented by an attorney; they cannot be represented by a non-lawyer. See *Gonzales v. Wyatt*, 157 F.3d 1016, 1021 (5th Cir. 1998) (citing *Eagle Associates v. Bank of Montreal*, 926 F.2d 1305, 1308-09 (2d Cir. 1991) (reviewing authority)).

As Plaintiff lacks standing to pursue relief on behalf of other prisoners, his claims on their behalf should be dismissed as frivolous.

**5. Local Rule 3.2**

The other forty-two prisoner-signatories ("putative plaintiffs"), to the extent they seek to

---

[7] See also *Gregory v. McKennon*, 430 F. App'x 306, 310 (5th Cir. 2011) (holding that the plaintiff "would lack standing to seek § 1983 damages for violations of other prisoners' rights . . . ."); *Doe ex rel. Doe v. Beaumont Indep. Sch. Dist.*, 173 F.3d 274, 281 (5th Cir. 1999), on reh'g en banc sub nom. *Doe v. Beaumont Indep. Sch. Dist.*, 240 F.3d 462 (5th Cir. 2001) ("[W]hen making a determination of standing[,]" trial courts "are exhorted to consider . . . whether the plaintiff is asserting his or her own legal rights and interests rather than the legal rights and interests of third parties.").

join Plaintiff as co-plaintiffs, may not do so.[8]  Local Rule 3.2 provides, "Each pro se prisoner

shall file a separate complaint alleging a violation of [his or her] civil rights."

Justification for Local Rule 3.2 lies, in part, in the Prison Litigation Reform Act

("PLRA"), which provides, "if a prisoner brings a civil action . . . , the prisoner shall be required

to pay the full amount of a filing fee."  28 U.S.C. § 1915(b)(1).  As one court explained:

> Prisoners cannot evade the plain language of the Act, and the clear intent of
> Congress, by the simple expedient of filing multi-party actions, hoping thereby to
> gain the benefits of litigation without paying the full fee required by the Act. For
> example, if the present case were filed as requiring a single filing fee, and this fee
> was apportioned equally among the nine named plaintiffs, each plaintiff would be
> liable for [a fraction of the filing fee]. This does not comport with the plain language
> of 28 U.S.C. § 1915(b)(1), which says that "if a prisoner brings a civil action ... the
> prisoner shall be required to pay the full amount of a filing fee."
>
> Furthermore, the Court notes that 28 U.S.C. § 1915(b)(3) provides that "in no event
> shall the filing fee collected exceed the amount of fees permitted by statute for the
> commencement" of a civil action or appeal. If all of the plaintiff-prisoners are
> allowed to be joined in one *in forma pauperis* lawsuit, then one of two results will
> necessarily ensue.  Either each plaintiff will not be required to pay the full amount
> of a filing fee, thus violating Section 1915(b)(1), or each plaintiff will be required to
> pay the full amount of a filing fee, which would mean that the total filing fee
> collected in the case would far exceed the amount of fees permitted by statute for the
> commencement of the case, which would violate Section 1915(b)(3).

*Jenkins v. Livingston*, 2010 WL 1740785, at *1-2 (E.D. Tex. Jan. 14, 2010), report and

recommendation adopted, 2010 WL 1740784 (E.D. Tex. Apr. 29, 2010); see *Patton v. Jefferson

Corr. Ctr.*, 136 F.3d 458, 464 (5th Cir. 1998) ("Congress enacted PLRA with the principal

purpose of deterring frivolous prisoner litigation by instituting economic costs for prisoners

---

[8] The putative plaintiffs signed an exhibit to Plaintiff's initial, deficient pleading, but they
did not sign the second pleading that Plaintiff filed on an approved form.  [See doc. #s 1-2, 4].
Nor did Plaintiff insert the other prisoners' names in the designated space on the form for listing
parties to the lawsuit.  [See doc. # 4, p. 2].  That said, the undersigned recognizes that the form
pleading contains little space for forty-two names and signatures.

wishing to file suits. . . . We doubt that Congress intended that § 1915(g) could be so facilely circumvented by the creative joinder of actions.") (quotation marks and quoted source omitted); *Jackson v. Stinnett*, 102 F.3d 132, 136-37 (5th Cir. 1996) ("The fee provisions of the PLRA were designed to deter frivolous prisoner litigation in the courts by making all prisoners seeking to bring lawsuits or appeals feel the deterrent effect created by liability for filing fees.") (internal quotation marks and quoted source omitted).

Here, each putative plaintiff, to the extent he or she wishes to join as a plaintiff, should file his or her own lawsuit, and pay his or her own filing fee, or submit his or her own in forma pauperis application. This is particularly appropriate as the putative plaintiffs did not sign the form pleading. Moreover, "the impracticalities and inherent difficulties of allowing" the signatories "to proceed jointly necessitate" severing each signatory's claims. *Beaird v. Lappin*, 2006 WL 2051034, at *4 (N.D. Tex. July 24, 2006). These impracticalities and difficulties include, for instance: differing relief sought, differing injuries or lack of injuries, differing release dates, differing custodial classifications, the possibility that some putative plaintiffs were convicted and others have yet to be convicted, the possibility that some putative plaintiffs may have accumulated three strikes,[9] the possibility that the prisoners' financial circumstances differ, "inmate transfers, security, the need for each individual plaintiff to represent himself with regard to his claims, the need for each plaintiff to sign the pleadings,[10] the consequent possibilities that

---

[9] See 28 U.S.C. § 1915(g).

[10] "Every pleading, written motion, and other paper must be signed by at least one . . . party personally if the party is unrepresented. The paper must state the signer's address, e-mail address, and telephone number. . . . The court must strike an unsigned paper unless the omission is promptly corrected after being called to the . . . party's attention." FED. R. CIV. P. 11(a).

documents may be changed as they are circulated, the possibilities of coercion by prisoners, [and] that prisoners may seek to compel prison authorities to permit them to gather to discuss joint litigation." *Id.* (footnotes added).

## Recommendation

For the foregoing reasons, **IT IS RECOMMENDED** that, to the extent the forty-two prisoner-signatories seek to join as plaintiffs, their claims be **SEVERED and DISMISSED WITHOUT PREJUDICE** to each signatory's right to file a new civil complaint. The Clerk of Court should be instructed to mail a copy of this Report and Recommendation, a copy of the Judgment adopting this Report and Recommendation, an in forma pauperis application, and a prisoner civil rights complaint form to each signatory listed in Document No. 1-2.

**IT IS FURTHER RECOMMENDED** that Plaintiff Derrick Dukes' requests to investigate or assess LaSalle Management and the conditions of confinement at MPCC should be **DISMISSED** as frivolous and for failing to state claims on which relief may be granted.

**IT IS FURTHER RECOMMENDED** that Plaintiff's requests for injunctive relief be **DISMISSED AS MOOT**.

**IT IS FURTHER RECOMMENDED** that, to the extent Plaintiff raises claims on behalf of other prisoners, the claims be **DISMISSED** for lack of standing and, consequently, as frivolous.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or

response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 28th day of January, 2019.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE